## DIXON v. AMERICAN TELEPHONE & TELEGRAPH CO. et al.

District Court, S. D. New York.
Dec. 28, 1935.

James C. Kennedy, Jr., of New York City, for plaintiff.

Merrell E. Clark, of New York City, for defendants.

LINDLEY, District Judge.

Plaintiff brought suit February 8, 1932, for damages for infringement of patent No. 1,197,460 granted to him September 5, 1916. Defendants deny validity and infringement.

Dixon's patent covers a combination intended to amplify the current reaching the receiving end of an ocean cable line. Currents transmitted over distances become feeble before reception, and on ocean cable lines they become very minute, as described in evidence, "sickly things." The problem confronting Dixon, then, was to bring about such amplification of feeble currents as to permit satisfactory operation of a receiving amplifying apparatus, free of distortion and mutilation. He employed a relay, comprising two amplifying elements, operated by radiation, in combination with a split-primary transformer. He did not claim to be the first in the art of producing a relay or amplification of current, but did claim that his combination was a first-born achievement of high speed in operation and unlimited amplification,

with elimination of disturbances and mutilations. His invention, if a true one, I believe, lay in the fact that he was able to remove friction and inertia characteristics of previously existing combinations utilizing mechanically varying resistances.

The prior art described arrangements containing carbon microphones in circuits much similar to that of Dixon. It showed attempts to employ these microphones as elements in circuits similar to that in which Dixon provided radiation operated elements. The defect in the prior combinations lay in the mechanical distortions and mutilations of the current. His idea, disclosed in his patent, was an attempted advance in the art because of the replacement of mechanical elements by others in which there were no defects identified with friction or inertia.

To meet this problem, superseding the former contrivances, Dixon substituted a mirror galvanometer, a source of light, two banks of selenium cells, a source of current, a transformer, and a recording apparatus connected to the secondary of the transformer. The mirror galvanometer is very sensitive, reflecting a beam of light which is "inertialess, distortionless and weightless" upon the selenium cells. This light beam, in neutral position, rests equally upon the two cells. As it moves back and forth, the illumination of one increases and that of the other decreases simultaneously, and in consequence the current through one bank rises and that through the other falls. Thus, as the light ray moves, the current in one primary of the circuit with which the selenium cells are connected, increases while the other decreases. The primaries are so wound and connected that the effects of the two primaries upon the core of the transformer are cumulative.

The result is a push-pull action, the volume of the current being amplified, increased speed resulting and circuit disturbances and distortion being removed. The amplification may aggregate ten, twenty, or a hundred times the volume of the input current.

Dixon described his selenium cells as "radio-electro-sensitive elements." He did not limit his claims to the use of such cells, but included also thermopiles, and said that he meant to include all such elements "whether the variation be due to action of light rays, heat rays or other forms of radiant energy." It is upon the use of the term "radio-electro-sensitive" elements that the decision in this cause must largely turn. Dixon was the first to use it, and it apparently has no well-established place in the vocabulary of electrical scientists. What he meant must be determined from his own language. What he said in explanation is the only dictionary of which we may avail ourselves. He said that "radio-electro-sensitive" elements include anything "operated by the motion of a beam of light or heat or radiant energy," and it is claimed that when the defendants inserted in their apparatus vacuum tubes in lieu of the ray of light and selenium cells, they substituted a mere equivalent.

Postponing discussing the soundness of the contention that vacuum tubes are equivalent to selenium cells and a ray of light, we are first confronted with whether Dixon, in view of the prior art, achieved invention.

Selenium is a metal possessing certain qualities in electrical resistance, the value of which has long been recognized. In 1907 one Allstrom expounded its qualities and functions. Muirhead, about the same time, availed himself of the qualities of selenium cells in his patent. In short, the idea of the use of selenium cells in electrical combinations was old.

The prior art discloses the use of carbon repeaters and transmitters in push-pull systems, but the mechanical defects in amplification of currents by these devices prevented satisfactory use in such devices as Dixon contemplated. Though selenium had been recognized as of utility, it had not been suggested in the connection described by Dixon. The push-pull system was old. But Dixon by his elimination of the carbon microphone and substitution of a ray of light and selenium cells, placed in combination with the circuit of push-pull action, produced a practical amplification of a weak circuit without distortion and without mutilation. His utilization of selenium cells, frictionless and inertialess, avoided previously existing practical defects.

My conclusion, therefore, is that Dixon created something new, not obvious to the delvers in the art. In the past they had struggled with the problem and progressed to a certain stage, but he brought about a practical successful solution of amplification of a weak current without distortion, mutilation or interference.

The Circuit Court of Appeals, in Western Electric Company et al. v. Wallerstein,

60 F.(2d) 723, held the Colpitts patent, No. 1,128,292, which covers the devices complained of, invalid. The court there held that the inclusion of vacuum tubes in an old combination was not invention. It is urged that if Colpitt did not achieve invention in utilizing vacuum tubes in prior combinations, on the ground that such action was anticipated by the use of carbon cells or other elements, a fortiori Dixon likewise failed in his patent when he included selenium cells. It seems to me, however, that the syllogism is fallacious. The conclusion does not follow from the premises. It may well be that Dixon so improved upon the prior art by the use of selenium cells, their radiation and the removal of distortion and mutilation, as to achieve conception of a new idea. But it by no means follows that because Colpitt still later substituted vacuum tubes for cells, he thereby achieved invention. The problem having been solved by Dixon to the extent of producing satisfactory results by the use of selenium cells, it may be that with the development of recognition of the scope of function of vacuum tubes, including filaments and grid, their utilization in the combination became to those skilled in the art an obvious thing.

But do not let us be driven by this process of reasoning to conclude that as a result thereof Colpitt's device necessarily infringes. That question is one of different aspect. For, though it may have been obvious for Colpitt to supplant cells with vacuum tubes, it does not follow that Dixon conceived an invention which contemplated the use of such tubes.

The defendants employ the same means as Dixon, except that for the selenium, actuated by rays of light, they have substituted vacuum tubes actuated by electric current. The filaments and plates of both tubes are connected to an output circuit, common to both devices, of push-pull character. The vacuum tube amplifiers are not concerned with any mechanical energy common to the carbon microphone repeater. By reason of the divided input circuit, the effect of a current impulse in one direction is to increase and make the voltage upon the grid of one of the tubes more negative and upon that of the other less negative. The voltage on the grid in the tube controls the amount of current that can flow in its plate-filament circuit. Thus we have substituted for the function of the cells, actuated by rays of light, vacuum tubes, the impulse of which arises from electrical action entirely. The defendants' element emits electrons. The circuit is actuated by electrical current, controlled entirely by the emission of electrons. The plaintiff's element is actuated by selenium cells, in turn motivated or controlled by the rays of light. The issue of infringement, then, is whether these two elements are equivalents; whether the vacuum tubes of defendants, placed in Dixon's circuit, are within the meaning of the term "radio-electro-sensitive element," as he defined that term and as he disclosed his connotation thereof in his patent.

A careful reading of Dixon's patent brings to me the conviction that he did not have in contemplation the use of an emission of electrons; that he did not conceive of the use of an element which instead of using radiation of light or heat would utilize electrical current. His explanation discloses no intent to include in "radiation," electric current. Such current is not a heat ray or a light ray; nor do I believe it is within the concept of Dixon in his use of the term, "or other forms of radiant energy." I do not believe that his claims legitimately can be construed to teach what the defendants have practiced in this respect. Accordingly, there is no infringement.

It is asserted that plaintiff is guilty of laches. In view of the conclusion I have reached, it is not necessary to decide this question, but if it were necessary, I believe the facts are such that laches is not shown. The position of the parties has not changed, nor has defendant been injured because of plaintiff's failure to make his claim sooner. Furthermore, there is not sufficient evidence to charge plaintiff with notice of what defendants were doing, prior to the time he began his suit.

There will be a decree that the claims sued upon are valid but not infringed, and dismissing the bill, therefore, for want of equity at plaintiff's costs. Proper form may be submitted.

What has been said herein will be included as part of the findings of fact and conclusions of law adopted simultaneously herewith.